## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, INTERNATIONAL UNION LOCAL 22, et al., | } } } } } |
| Plaintiffs, | } } |
| v. | }     Case No. 5:16-CV-00271-MHH |
| | } |
| TENNESSEE VALLEY AUTHORITY, | } } } |
| Defendant. | } } |

## MEMORANDUM OPINION

The Tennessee Valley Authority operates nuclear power facilities in Alabama and Tennessee. Plaintiffs United Government Security Officers of America, International Union and United Government Security Officers of America, International Union Local 22 are non-profit labor organizations that represent TVA security officers. In this opinion, the Court will refer to the unions collectively as UGSOA. This action concerns a memorandum of understanding – MOU – that governed salary negotiations between UGSOA and TVA. The case is before the Court on TVA's motion for summary judgment on UGSOA's breach of contract claim. (Doc. 43).

During a hearing on TVA's motion, the Court considered TVA's argument that the six-month statute of limitations for labor disputes bars UGSOA's breach of contract claim. (Doc. 52, pp. 2–4). The TVA Act does not have its own statute of limitations. For the reasons discussed during the hearing in this matter, (Doc. 52, pp. 2–11), the Court finds that Alabama's six-year statute of limitations for contract actions governs this lawsuit. It is undisputed that UGSOA filed the complaint in this matter within the six-year statute of limitations. Therefore, the Court denies TVA's motion for summary judgment on its affirmative defense of the statute of limitations.

In the complaint in this matter, UGSOA alleged that TVA breached the MOU between the parties because TVA did not comply with the "Determining Pay for Fiscal Years 2014 through 2016" term of the agreement. (Doc. 1; Doc. 1-1, p. 2). In its opposition to TVA's summary judgment motion, UGSOA added a new breach-of-contract theory based on TVA's alleged breach of the "New Overtime Rule" provision in the MOU. (Doc. 1-1, p. 3; Doc. 47). During the hearing on TVA's summary judgment motion, the Court granted TVA's motion for summary judgment with respect to UGSOA's overtime rule breach-of-contract theory. (Doc. 52, pp. 11–17, 58).[1]

---

[1] During the hearing, the Court also granted TVA's summary judgment motion with respect to UGSOA's claim for damages for union dues that the unions purportedly lost because union membership fell after the parties' 2013 salary negotiations. The Court has found no evidence in the record to support that element of damage. (Doc. 52, pp. 54, 58).

This opinion resolves UGSOA's breach-of-contract claim concerning the "Determining Pay" provision in the MOU.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018).

## RELEVANT FACTS

UGSOA and TVA are parties to a series of collective bargaining agreements. (Doc. 1, ¶ 10; Doc. 9-1). In 2010, UGSOA and TVA entered into a collective bargaining agreement effective May 2010 through May 2013. (Doc. 25-2). In

anticipation of negotiations for a new collective bargaining agreement, in February 2012, the parties signed a memorandum of understanding concerning pay structure, overtime, and the method for determining pay for fiscal years 2014 through 2016. (Doc. 1-1).

During negotiations concerning the terms of the MOU, UGSOA proposed that the parties collect salary and wage data for comparable nuclear security work in a specific geographic area to "use[] as the basis for determining a prevailing wage as stated in the TVA Act and Collective Bargaining Agreement." (Doc. 44-3, p. 4; Doc. 44-1, p. 18, tpp. 70–72). Ultimately, the parties included in the MOU a "Determining Pay for Fiscal Years 2014 through 2016" provision that states:

> Once every three years, beginning in 2013 for FY 2014 rates, the parties will collect salary and wage data from utilities with comparable nuclear security work in the Nuclear Regulatory Commission's Region 2 geographic area. This data will be used as the basis for negotiations of the basic salary rate for the Senior NSO position.

(Doc. 1-1, p. 2). The MOU provides that the salary rate for three classifications of NSOs is a percentage of the base salary rate for Senior NSOs. (Doc. 1-1, p. 2). UGSOA asserts that TVA breached the MOU in 2013 by "failing to renegotiate wages for years 2014 through 2016 based upon wage data for NRC Region 2." (Doc. 1, ¶ 16).

## ANALYSIS

To survive TVA's motion for summary judgment, UGSOA must establish "(1) the existence of a valid contract binding the parties in the action, (2) [its] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Southern Med. Health Systems, Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995) (citing *McGinney v. Jackson*, 575 So. 2d 1070, 1071–72 (Ala. 1991)).[2] UGSOA argues that the Court should deny TVA's motion because the "Determining Pay" provision in the MOU is ambiguous, and a jury should resolve the ambiguity and determine whether TVA breached that provision. (Doc. 47; Doc. 54, p. 6, n. 5).

"[W]hether a contract is ambiguous or unambiguous is a question of law for a court to decide." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 308 (Ala. 1999). "A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." *Ohio Cas. Ins. Co. v. Holcim, Inc.*, 548 F.3d 1352, 1357 (11th Cir. 2008) (quoting *FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc.*, 914 So. 2d 344, 357 (Ala. 2005)).

The Court agrees that the "Determining Pay" provision in the MOU is ambiguous. (Doc. 52, p. 58). As UGSOA argues, the provision is ambiguous

---

[2] At the hearing on its summary judgment motion, TVA argued that the Court should apply federal contract law rather than Alabama law to evaluate UGSOA's contract claim. (Doc. 52, p. 22). The federal standard is not significantly different from the Alabama standard. *See Pryor v. United States*, 85 Fed. Cl. 97, 104 (2008) (providing elements of federal breach of contract claim). Moreover, in its supplemental brief concerning the issues that TVA now argues are dispositive of UGSOA's contract claim, TVA relies heavily on Alabama law. (Doc. 55). The Court will too.

"because it fails to identify how the [Region 2] data will be used by the parties to determine the 'basis for [salary] negotiations.'" (Doc. 47, p. 13).[3] As TVA sees it, it could comply with the provision by using Region 2 data "as the basis for its ultimate negotiating position" with UGSOA. (Doc. 49, p. 11; Doc. 44-18, p. 7, tp. 26). By using Region 2 data as the basis for its final proposal for the Senior NSO base salary rate, TVA believes it used Region 2 data "as the basis for negotiations of the basic salary rate for the Senior NSO position."[4] UGSOA understood the "Determining Pay" provision to obligate TVA to use Region 2 data as the basis for calculating an average to be used to determine a prevailing wage. (Doc. 47, p. 14; Doc. 44-1, p. 20; tp. 77). Neither interpretation of the "Determining Pay" provision is unreasonable. "That both [interpretations] are reasonable is sufficient to establish that the [provision] is ambiguous . . .." *Stewart v. KHD Deutz of America, Corp.*, 980 F.2d 698, 704 (11th Cir. 1993).

---

[3] UGSOA characterizes the ambiguity as a facial ambiguity. (Doc. 47, p. 13). The Court does not agree with that characterization. The Court believes the ambiguity is latent. "A latent ambiguity occurs where language is clear and intelligible but when considered in light of certain extraneous facts, it takes on multiple meanings." *Estate of Ingrum v. Financial Freedom Sr. Fnd'g Corp.*, 460 Fed. Appx. 809, 813 (11th Cir. 2012) (citing *Jacoway v. Brittain*, 360 So. 2d 306, 308 (Ala. 1978)).

[4] TVA's initial offer for the base salary rate for Senior NSOs constituted a zero percent salary increase. (Doc. 52, p. 33). TVA's final Senior NSO base salary offer was based on Region 2 and Region 4 data. (Doc. 52, p. 38; *see also* Doc. 52, p. 42). TVA contends that any use of Region 2 data in its final offer was sufficient.

TVA argues that the "Determining Pay" provision is so vague and ambiguous that it is unenforceable. TVA argues that because the provision does not identify "the wage to be paid," the provision omits an essential term, and the Court may not enforce the provision. (Doc. 55, p. 4). The Court agrees, for the most part.[5]

Under Alabama law, an agreement to negotiate – essentially an agreement to try to agree in the future – "cannot be made the basis of a cause of action" because such an agreement is too indefinite to be enforceable. *Muscle Shoals Aviation, Inc. v. Muscle Shoals Airport Auth.*, 508 So. 2d 225, 227 (Ala. 1987) (quoting *Radford v. McNeny*, 104 S.W.2d 472, 474 (Tex. 1937)). "There would be no way by which the court could determine what sort of a contract the negotiations would result in, no rule by which the court could ascertain whether any, or, if so, what damages might follow a refusal to enter into such future contract." *Muscle Shoals*, 508 So. 2d at 227. "It is fundamental that courts will not enforce a contract which is vague, indefinite, or uncertain. It is not the province of the court to make or remake a contract for the parties." *Muscle Shoals*, 508 So. 2d at 228 (citing *Cotton States Mut. Ins. Co. v. Conner,* 387 So. 2d 125 (Ala. 1980)). Whether a contract fails for

---

[5] UGSOA objects to the Court's consideration of this argument because UGSOA believes TVA raised it for the first time at the motions hearing. (Doc. 54, p. 1, n.1). In fact, the Court raised this issue during the summary judgment hearing. Pursuant to Rule 56(f)(2) of the Federal Rules of Civil Procedure, the Court identified the issue and gave the parties an opportunity to brief the issue. Therefore, the Court may consider the issue.

indefiniteness is question of law for a court to decide. *White Sands Grp., L.L.C. v. PRS II, LLC*, 998 So. 2d 1042,1052 (Ala. 2008).

"The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *White Sands*, 998 So. 2d at 1051 (quoting 17A Am. Jur. 2d *Contracts* § 183 (2004)) (emphasis omitted). While "the law may imply the intention of the parties to determine non-essential terms of a contract," *Muscle Shoals*, 508 So. 2d at 227 (citations omitted), the essential terms of a contract must be sufficiently definite and certain. *Gardens at Glenlakes Property Owners Assoc. v. Baldwin Cty. Sewer Serv., LLC*, 225 So. 3d 47, 55 (Ala. 2016).

> '[O]ur courts have not favored the destruction of contracts on the grounds that they are ambiguous, uncertain, or incomplete, and will, if feasible, so construe a contract as to carry into effect the reasonable intention of the [contracting] parties if that can be ascertained. Nevertheless, a trial court should not attempt to enforce a contract whose terms are so indefinite, uncertain, and incomplete that the reasonable intentions of the contracting parties cannot be fairly and reasonably distilled from them.'

*Gardens at Glenlakes Property Owners Assoc.*, 225 So. 3d at 55 (quoting *Cook v. Brown*, 393 So. 2d 1016, 1018 (Ala. Civ. App. 1981)). "[A] contract that 'leaves material portions open for future agreement is nugatory and void for indefiniteness.'" *White Sands*, 998 So. 2d at 1051 (citations omitted).

The Court disagrees with the proposition that the "Determining Pay" provision is unenforceable because the provision does not identify "the wage to be

paid." Alabama courts routinely enforce contract terms that do not explicitly set an amount but instead call for "a reasonable price" or some other future calculation based on then-existing information. *Gardens at Glenlakes Property Owners Assoc.*, 225 So. 3d at 55.

The challenge here is subtler. The question here is whether the provision describing the manner in which the parties were to arrive at the basic salary rate for Senior NSOs is so indefinite that "[t]here would be no way by which the court could determine what sort of a contract the negotiations would result in, no rule by which the court could ascertain whether any, or, if so, what damages might follow a refusal to enter into such future contract." *Muscle Shoals*, 508 So. 2d at 227.[6]

UGSOA argues that TVA breached the "Determining Pay" provision by not using Region 2 data to determine a prevailing wage. But in negotiating the MOU, UGSOA proposed that Region 2 data "be used as the basis for determining a prevailing wage as stated in the TVA Act and Collective Bargaining Agreement for the Senior NSO position," (Doc. 44-3, p. 5), and TVA rejected the proposal. Instead, the parties agreed that the data would be collected and "used as the basis for negotiations." (Doc. 1-1, p. 2).

---

[6] The "Determining Pay" provision is a material provision. The pay structure for all TVA security officers is based on the basic salary rate for Senior NSOs.

If the parties had agreed to use Region 2 data to compute the prevailing wage, then the only thing the parties would have to negotiate in 2013 was the data points to be included in the prevailing wage calculation. In that case, the "Determining Pay" provision would have been sufficiently definite, and the Court could determine whether TVA had or had not used the data in a way that was consistent with the parties' intentions. Had TVA breached that agreement, the Court would be able to fashion a remedy. If TVA had agreed to use Region 2 data as the basis for each proposal in the 2013 negotiations for the Senior NSO basic salary, then the term would be definite enough for the Court to determine whether TVA complied, and the Court could develop an appropriate remedy if TVA had breached the term. In both cases, each of TVA's offers during salary negotiations would have been linked in some way to Region 2 data. Such a provision, "where the parties provide the broad parameters of an agreement but include room for discretion in fulfilling particular contractual duties," is permissible. *See Aldora Aluminum & Glass v. Poma Glass & Specialty Windows, Inc.*, 683 Fed. Appx. 764, 769 (11th Cir. 2017).

The "Determining Pay" provision that requires the parties only to use Region 2 data "as a basis for negotiations" leaves to each party "an unbridled right to determine the nature of their performance, [and, as such, the provision is] too indefinite for enforcement." *White Sands*, 998 So. 2d at 1051 (quoting *Williston on Contracts*, § 4:21 647–48 (4th ed. 2007)) (quotations and emphasis omitted).

The Eighth Circuit Court of Appeals' interpretation of a similar contractual provision is instructive. In *Ohio Calculating, Inc. v. CPT Corp.*, the contract provision at issue stated that should certain triggering events occur, one of the parties could request an appraisal of the defendant's business to determine the business's market value. 846 F.2d 497 (8th Cir. 1988). Under the parties' agreement, the market value would "not be binding but [would] serve as a basis for good faith negotiations" between the parties as to an eventual price. *Ohio Calculating*, 846 F.2d at 501. Like Alabama law, Minnesota law states that "an alleged contract which is so vague, indefinite, and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable." *Ohio Calculating*, 846 F.2d at 501 (quoting *King v. Dalton Motors, Inc.*, 109 N.W.2d 51, 52 (1961)). Applying this standard, the Eighth Circuit found the "basis for good faith negotiations" language made it impossible for a court or jury to determine what would have happened if the parties had negotiated in such a manner. *Ohio Calculating*, 846 F.2d at 502.

The "Determining Pay" provision in the parties' MOU does not provide a basis for an enforceable remedy, even if the Court assumes that TVA breached the provision.[7] The "Determining Pay" provision expressly requires the parties to use

_____

[7] The TVA's opening offer of a zero percent increase was not a good faith offer and likely constituted a breach of the obligation to negotiate in good faith that TVA concedes is inherent in contract and labor law. (Doc. 52, p. 27).

Region 2 data during their Senior NSO salary negotiations, but the provision does not establish criteria for the way in which the parties were to use the data during their negotiations. The provision does not obligate TVA to use the Region 2 data exclusively to calculate a prevailing wage. Neither the Court nor a jury may calculate damages for TVA's alleged breach of the provision because it is impossible to forecast the outcome of negotiations based on the use of the wage data. A damages award would be speculative and unworkable.

## CONCLUSION

Accordingly, the Court enters judgment for TVA on UGSOA's breach of contract claim concerning the "Determining Pay" provision. Combined with the Court's rulings on the record during the February 6, 2020 hearing and the Court's previous order dismissing some of UGSOA's claims, this opinion resolves UGSOA's claims against TVA. By separate order, the Court shall ask the Clerk to please close the file.

**DONE** and **ORDERED** this March 17, 2020.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE